# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS

Lindra I. Jackson, Owner,

4175 Bunker Hill Rd. Apt 5309

Garland, Tx 75048

Civil Action No.

_____

**_Plaintiff(s)_**

**v.**

Small Business Administration
409 3rd Street, SW
Washington, DC 20416
;
Isabella Casillas Guzman, Administrator,
Small Business Administration
409 3rd Street SW
Washington, DC 20416
;

United States of America

;

Rapid Financial Services, LLC.
4500 East West Highway 6th Floor
Bethesda, MD 20814

;

Rocket Mortgage, LLC d/b/a Rocket Loans
1274 Library Street, 2nd Floor
Detroit, MI 48226

;

Quicken Loans, LLC. d/b/a Quicken Loans
1050 Woodward Ave.
Detroit, MI 48226

;

Rocket Companies, Inc.
1050 Woodward Ave.
Detroit, MI 48226

_____

**_Defendant(s)_**



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC – 4 2023

CLERK, U.S. DISTRICT COURT
By_____
Deputy

3 - 23 C V 2 6 7 7 - S

## PLAINTIFF'S ORIGINAL PETITION

### TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Lindra I. Jackson (Plaintiff) and for cause of action against Defendant, the United States of America ("USA), the U.S. Small Business Administration ("SBA", "the agency") and its Administrator, Isabella Casillas Guzman ("the Defendant(s)", respectively) – Rapid Financial Services ("the vendor") and its subsidiaries and company owner Rocket Mortgage, LLC, Quicken Loans, and Rocket Companies would show unto the court as follows:

## PARTIES

1. Plaintiff, Lindra I. Jackson is and at all times mentioned was, a resident of Dallas County.

2. "The United States of America"

3. The U.S. Small Business Administration under the direction of,

4. Isabella Casillas Guzman, Administrator

5. Rapid Financial Services, LLC. d/b/a Rapid Advance, an SBA third party contractor and named affiliate of,

6. Rocket Mortgage, LLC d/b/a Rocket Loans d/b/a parent company of -

7. Quicken Loans also a subsidiary of -

8. Rocket Companies, Inc.

## COMPLAINT FOR RELIEF

Plaintiff Lindra I. Jackson alleges, and states as follows:

## INTRODUCTION

9. This is an action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, whereby the Plaintiff seeks to recover monetary damages for the personal injury she suffered due to negligence and/or errors[1] that resulted in wage and income loss for the Plaintiff.

10. Plaintiff is the sole owner of the business, LJ Professional and Financial Services, LLC. ("LJPFS"), is suing for the Defendants' mishandling of the business's application for federal emergency aid resulting in her loss of income thus resulting major harm caused to her personal finances and mental health.

    LJ Professional and Financial Services, LLC. ("LJPFS"), is and at all times mentioned was a registered business in the state of Texas for which, Lindra I. Jackson – is listed as its owner and registered agent in the state of Texas. LJPFS has been a registered business in the state of Texas since July 27, 2018, after undergoing a name change from High Achievers Credit Solutions, LLC - established March 1, 2018.

11. Pursuant 28 U.S.C §1402 (a)(1)  "The United States of America" shall be substituted as party to the suit when the offending agency, here, the U.S. Small Business Administration and its administrator, Isabella Casillas Guzman, and the employees acting under the direction of Isabella Casillas Guzman, when acting within their scope of [her] office of employment shall under the circumstances where the United States, if it were a private person, would be liable to the Plaintiff in accordance with the law of the place where the act of [negligence] occurred.

12. Whereby the Defendants have taken adverse action against the Plaintiff in a credit transaction, in which, the Plaintiff applied for COVID related Economic Injury Disaster Loan program the Plaintiff seeks action against the U.S. Small Business Administration under, § 701 (a)(1) and  – the Equal Credit Opportunity Act ("ECOA") 15

---

[1] Defined in the relevant statute as "wrongful acts or omissions"

U.S.C. § 1691 which provides:

(a) Activities constituting discrimination. It shall be unlawful for any creditor[2] to discriminate against any applicant[3], with respect to any aspect of a credit transaction –

(1) on the basis of race, color, religion, national origin, sex, or marital status, or age[4]

(2) because all or part of the applicant's income derives from any public assistance program

(d) Reason for adverse action[5]…

(1) Within thirty days … after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application

(2) Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor. A creditor satisfies this obligation by -

(A) providing statements of reasons in writing as a matter of course to applicants against whom adverse action is taken…

(3) A statement of reasons meets the requirements of this section **only** if it contains the **specific reasons** for the adverse action taken

13. The Plaintiff, a person and citizen of the United States also bring suit against the U.S. Small Business Administration under, 42 U.S.C. § 1981(a-c), 83 – Civil action for deprivation of rights ("Civil Rights Act") with the full belief that she has been deprived of rights, privileges, protection and government aid discriminately.

14. The Plaintiff understands Rapid Finance to be the chosen third party contractor granted the government contract to be the COVID EIDL loan processor to assist with the large volume of loan requests. The plaintiff, without discovery, cannot tell the extent to which this Defendant is liable for the damages she has suffered as she is unaware of this Defendant's level of involvement in her loan processing.

15. The Plaintiff names Rocket Mortgage, LLC. d/b/a Rocket Loans as a Defendant in this cause. Rapid Finance was named the chosen third party contractor granted the government contract to be the COVID EIDL loan processor to assist with the large volume of loan requests. Rapid Finance is an affiliate of Rocket Loans. The plaintiff, without discovery, cannot tell the extent to which this Defendant is liable for the damages she has incurred as she is unaware of this Defendant's level of involvement in her loan processing.

16. The Plaintiff names Quicken Loans, LLC. d/b/a Quicken Loans as a party to this cause. Rapid Finance was the chosen third party contractor granted the government contract to be the COVID EIDL loan processor to assist with the large volume of loan requests. Rapid Finance is an affiliate of Rocket Loans. Quicken Loans and Rocket Loans are subsidiaries of Rocket Companies, Inc. The plaintiff, without discovery, cannot tell the extent to which this Defendant is liable for the damages she has incurred as she is unaware of this Defendant's level of involvement in her loan processing.

---

[2] 15 USC § 1691a (e) The term "creditor" means any person who regularly extends, renews, or continues credit; any person who regularly arranges for the extension, renewal, or continuation of credit; or any assignee of an original creditor who participates in the decision to extend, renew, or continue credit (f) The term "person" means a natural person, a corporation, government, or governmental subdivision or agency, trust, estate, partnership, cooperative, or association.  The U.S. Small Business Administration is a creditor, to which, this statute of law applies.

[3] 15 USC § 1691a (a) The term "applicant" means any **person** who applies to a creditor directly for an extension, renewal, or continuation of credit…

[4] …provided the applicant has the capacity to contract, here the applicant, Lindra I. Jackson was of legal age to contract at the time of application

[5] 15 USC 1691 (d) (6) For the purpose of subsection (d) the term "adverse action" means a denial or revocation of credit… or a refusal to grant credit in substantially the amount or substantially the terms requested.

17. The Plaintiff names Rocket Companies, Inc. as a party to this cause. Rapid Finance was the chosen third party contractor granted the government contract to be the COVID EIDL loan processor to assist with the large volume of loan requests. Rapid Finance is an affiliate of Rocket Loans. Quicken Loans and Rocket Loans are subsidiaries of Rocket Companies, Inc. The plaintiff, without discovery, cannot tell the extent to which this Defendant is liable for the damages she has incurred as she is unaware of this Defendant's level of involvement in her loan processing.

## JURISDICTION & VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1402 because it presents federal questions under the FTCA.

19. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 1988 because it governs over civil matters for the vindication of civil rights.

20. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1691e (f) because it presents federal questions under the ECOA.

21. Venue lies in this district under 28 U.S.C. § 1391(e)(1).

22. Venue is proper in Dallas County pursuant to Texas Civil Practice and Remedies Code § 15.001(a) & § 15.002(1).

## PLAINTIFF'S 'ECOA' CLAIM

### A. Title VII standard test for establishing ECOA discrimination – Disparate Treatment Analysis

23. Disparate Treatment Analysis[6]: In general, disparate treatment analysis seek to show similarly situated applicants were treated more favorably under similar circumstances. These complaints are examined under a tripartite analysis whereby a complainant must first establish a prima facie case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination – that a prohibited consideration was factored into the adverse action.

24. Disproportionate Impact Theory[7]: This theory seeks to prove that a rule or qualification, while not discriminatory on its face, negatively effects and disproportionately impacts a specific, legally protected class of individuals.

25. For the purpose of her complaint the Plaintiff will argue that she received disparate treatment from the lender on the basis of her gender and race. She not only was treated disparately, despite having better credit, more proof of eligibility and qualifications, providing financial statements to show she was not a credit risk and able to repay – the Plaintiff was treated *less favorable*[8] than *worse* situated businesses.

---

[6] Disparate treatment analysis under the widely held test articulated in *McDonnell Douglas Corp v. Green, 411 US 792 – Supreme Court, 1973*

[7] Disproportionate impact theory and the widely held testing standard is best explained in *Griggs v. Duke Power Co., 401 US 424 – Supreme Court, 1971*

[8] where the governing statute calls for the Plaintiff's treatment to be assessed to that of 'similarly situated' applicants she can show and prove she received worse treatment than less favorable applicants

### B. Plaintiff must satisfy *'prima facie'* burden

26. In such cases *prima facie* is significant in the litigation process because it "raises an inference of discrimination only because we assume these acts, if unexplained are more likely than not based on the consideration of **impermissible** factors.[9]"

27. To meet the *prima facie* burden must offer proof that:

> *(1)* she belongs to a minority or a protected class –
>
> *(2)* she applied for and was qualified for a loan –
>
> *(3)* despite her qualifications and eligibility was rejected, and
>
> *(4)* other similarly situated applicants were granted loans or were treated favorably than the Plaintiff in the application process

The Plaintiff is a young black woman. A double minority. That applied for and qualified for the loan product for which this action has been brought but was ultimately denied when screened by an appeal agent for factors that were not relevant, and by any prudent person, can easily be identified as discrimination.

On or about April 15, 2020 plaintiff applied for their initial COVID EIDL loan. The Plaintiff's application was denied due to 'unsatisfactory credit history' on April 18, 2020 – the plaintiff knew the credit requirements and knew it had to be a mistake. Upon pulling her credit score the Plaintiff identified a credit card issuer that offered a COVID related deferment had marked her credit score with a missed payment causing a drastic reduction in points. Upon resolving the error, the Plaintiff sent the Defendants multiple requests for reconsideration and a copy of the letter from the credit card issuer, Discover - detailing the mistake, a copy of her updated credit report and authorization for the agency to conduct a new credit pull.

Whilst there will be subsequent erroneous denials -it is important to note on August 4, 2020, the Defendants conducted a new credit pull and determined the Plaintiff to be credit-eligible.

The Plaintiff is unsure which set of qualifications and guidelines her application should be screened under – her application, when initially submitted in August 2020 or the more stringent criteria enacted by the agency due to rampant fraud which was enforced at the time of her December 3rd appeal. Even so it becomes apparent the Defendants relied on impermissible factors in their decision making.

Congress regulated and published guidelines were (as of April 15, 2020 and August 4, 2020) – at the time of Plaintiff's initial application and first request for reconsideration, respectively:

- With an approved minimum credit score applicants were allowed to "self-certify", using the streamlined application and SBA Form 3503[10], their business prior year gross receipts and to their business's existence – this flawed system led to billions in loss to taxpayers at the hands of fraudsters who saw a flaw in the system and took advantage while legitimate businesses, as the Plaintiff's was left to suffer

  As mentioned, due to a credit reporting error, the Plaintiff's score did not meet the minimum required – however, at reconsideration, the Plaintiff's score did, and the Plaintiff was not able to self-certify as other applicants had been. No SOP or literature exists that stated applicants will lose their right to have their loan approved and funded under the same self-certification procedures

Congress regulated and published guidelines were (on December 3, 2021) – date of Plaintiff's final appeal:
For loans $500,000 or less[11]

---

[9] See *Texas Dept of Community Affairs v. Burdine, 450 US 248- Supreme Court, 1981*

[10] Form 3503 is the U.S. Small Business Administration Self-Certification for Verification of Eligible Entity for EIDL

[11] Client eligible for a maximum loan size of $377,200 based on gross receipts of $188,600

- For profit businesses: Minimum credit score of 570 is required
- Repayment ability of for-profit businesses will be determined by the owner meeting the minimum credit score
- $25,001 - $500,000 – (UCC-1) Security agreement will serve as collateral
- $200,000+: Except for nonprofit organizations and loans to ESOPs; all loans require a full personal guaranty
- Eligibility Entities:
  (a) have less than 500 employees
  (b) Each owner, member, partner, shareholder of 20% or more must be a U.S Citizen – with a valid Social Security Number – Sole proprietorships are eligible
  (c) If the Applicant business (or the owner, if the business is a sole proprietor) is **not** currently in bankruptcy
  (d) Those that were "in operation" before January 1, 2020[12]


In September 2021 new legislation allowed for higher loan limits. Applicants previously approved for a COVID EIDL loan were allowed to submit requests for increases based on new loan processing guidelines. The Plaintiff's maximum eligible loan amount, calculated by taking the 2019 gross receipts minus 2019 costs of goods sold multiplied by 2, or $500,000, whichever is less. For the Plaintiff, it would have been ($188,600 − 0)2 = $377,200.

- The Plaintiff had a satisfactory credit score thus satisfying the repayment ability underwriting requirement.
- The Plaintiff signed a SBA form certifying she was sole owner of the company – owning 100% and expressed willingness to sign a UCC-1 security agreement at the extension of credit to serve as collateral.
- The Plaintiff expressed her ability to personal guarantee the loan at the extension of credit.
- The Plaintiff's entity – LJ Professional and Financial Services, LLC.:
  (a) had (1) employee at the time of application
  (b) Is solely owned (100%) by the Plaintiff, Lindra I. Jackson – who is a born U.S. citizen with a valid Social Security Number provided to the Defendants
  (c) Is not currently, actively, nor has ever been in bankruptcy. Additionally, the owner, herself had never filed bankruptcy.
  (d) Was in operation before January 1, 2020. LJPFS was formed as High Achievers Credit Solutions, LLC. with the State of Texas Secretary of State business filing division on March 1, 2018 – on July 27, 2018 the Plaintiff filed a 'Certificate of Amendment' to have the name officially amended.
  (e) During the December 3, 2021 final appeal hearing the Defendants stated they were under the belief and suspicion that the business did not exist prior to the COVID-19 pandemic; to refute this the Plaintiff provided the Defendants:
    1. The required 2019 Federal Income Taxes, including all schedules, for the applicant business – stamped by the local IRS office
    2. A full copy, of all pages, of her 2019 business bank statement – notarized by the local bank branch manager

---

[12] According to the Defendants own publications a business only merely needed to 'start' being "in operation" on or between January 1, 2020 and January 31, 2020 and to satisfy the agency suspicion that the business was formed and "in operation" or 'started being' "in operation, an entity can provide 1. 2019 Federal Income Taxes, including all schedules, for the applicant business.

3. Documents from the IRS certifying her tax office, Electronic Filing Identification Numbers (EFIN) with a report of her tax office volume

4. Rental agreements for the office space she occupied

5. Marketing posts timestamped before the onset of the COVID-19 pandemic

6. Screenshots of correspondences with clients and business associates

7. Business cards and order form for business cards dated before COVID 19 pandemic

8. Plaintiff's "Google My Business" listing

9. Emails with Tx Secretary of State associates

10. Copies of business contracts that preceded the COVID-19 pandemic

11. Later when it was suggested the Plaintiff's business was dormant and only reinstated for the purpose of fraudulently obtaining the COVID EIDL loan the Plaintiff sent the Defendants copies of her bank statements signed by bank representatives, for the time period in question, to remove any doubt.

## C. Burden of Proof shifts to the Defendant(s)

28. If the Court is satisfied the Plaintiff meets all 4 'prima facie' requirements the burden of proof shifts to the Defendants to articulate a legitimate, non-discriminatory reason for the denial of credit.

## D. Some Key Reasons Plaintiff Suspects Discrimination

29. During the Plaintiff's December 3rd final appeal hearing – the Defendant's line of questioning was accusatory – the Defendant questioned the Plaintiff on how or why she reported a business gross receipt of a few thousand dollars in 2018 and exponential earnings, exceeding $100,000 in 2019. The Plaintiff believed this line of questioning to be odd 1. because businesses are supposed to make money – she could not understand why she was being scrutinized for being successful in her business and questioned if this line of questioning was customary and 2. Her business earnings were supported by the business bank statements that itemized the deposits from her third-party tax bank which further legitimized her claims. These statements were notarized by the branch manager. 3. The mere acknowledgement of the Plaintiff's 2018 Schedule C Earnings proves the Defendants are aware enough evidence existed to support the Plaintiff was in business before the declared COVID-19 pandemic

30. The fraud reported against the COVID related SBA programs have been widely reported but most outlets would lead the public to believe this fraud was being perpetuated by young, black women, such as the Plaintiff, at a disproportionate rate thus causing unfair and unnecessary scrutiny to be placed on the Plaintiff's legitimate request. Instead of verifying, easily verifiable information, the Plaintiff was accused of proffering false documents and information in an effort to obtain a loan all evidence and documents shows she is otherwise eligible for. For example, the agent stating "I believe you formed your business after the pandemic" – verifying the business formation date is easy to do online or by phone with the appropriate state agency. Additionally, the Plaintiff had provided the Defendants with business bank statements for the year prior. To honestly believe the Plaintiff was committing fraud one would have to overlook a preponderance of evidence and make the Texas Secretary of State business filing division's agents and the J.P. Morgan Chase bank complicit in fraud as well, along with a host of other institutions – including the IRS with whom the Plaintiff had a EFIN for her tax offices prior to the COVID-19 pandemic.

31. Using public data reports the Plaintiff has identified tens of thousands of lesser qualified applicants who were extended loans - similar to or greater than the loan the Plaintiff sought. In fact, the Plaintiff, on April 4, 2022, identifying loans made to businesses that were not formed until **after** the applicant made the loan or loan proceeds were disbursed- sent an email to the Defendant informing them of her findings and questioning the disparities and discrimination.

**E.  Ineligible Applicants Approved for Sizable COVID EIDL Loans**

32.  This list is compiled under the premise that every applicant met the minimum credit standard. The SBA used a cloud-based system and a contractor to screen applicants. Any applicant not meeting minimum credit standards were immediately denied and their application did not progress through other underwriting and screening processes.

33. **Hassan Kanyike**

- Hassan Kanyike, a Ugandan born male, received EIDL loan proceeds to his personal checking account on June 22, 2020, for $149,000 for HK Development.

- Hassan Kanyike applied for the EIDL loan on June 15, 2020 – meaning the loan was processed and funded within a week.

- There is no listing for "HK Development" or "HK Development International" on the California business registry

- According to the criminal complaint[13], the business address listed on Hassan Kanyike's EIDL loan application is the same address listed on Mr. Kanyike's California driver license

- In support of his EIDL loan application Kanyike self-certified that the business had a gross revenue of $1,600,000 and Cost of Goods Sold (COGS) of $820,000 for the 12 months prior to the date of disaster.

- Mr. Kanyike represents "HK Development" as a sole proprietorship in his EIDL loan application. However, on or about March 27, 2020, Mr. Kanyike applied for a PPP loan in which he indicated the business had eight employees and an average monthly payroll of $44,080 securing a loan on April 11, 2020 for $98,750.

- Hassan Kanyike applied for (3) three additional PPP loans for other businesses in the amount of $903,800

- Investigatory reports obtained for the purpose of prosecuting Kanyike states he submitted, at least, 7 or more applications – some of which were denied. His submission of multiple applications did not bar him from successfully obtaining loans from the SBA.

34. **Vahe Dadyan**

- Vahe Dadyan, a white male, was charged and convicted along with several co-conspirators, presumably all white males and females, of fraudulently obtaining COVID EIDL and PPP loans including:

    - an EIDL loan obtained on June 16, 2020, for $149,900 for G&A Diamonds
    - an EIDL loan obtained on June 17, 2020, for $150,000 for Redline Auto Collision
    - an EIDL loan obtained on June 22, 2020, for $149,900 for Timeline Transport
    - 8 PPP loans totaling $1,383,474

- A query of the California business registry was not able to find a 'G&A Diamonds' actively participating in business on or before 2019 or owned by Dadyan or any of his co-conspirators. The only business found with a similar name was formed in January 2003 and has been inactive since October 25, 2013

- A query of the California business registry was not able to find a 'Redline Auto Collision' found a business formed in April 2015 and terminated on September 23, 2021, by Edward Paronyan – one of the coconspirators named in court documents. Court documents state in its PPP loan application 'Redline Autos' owners certified it had 12 employees with an average monthly payroll expense of $52,075. However, in its EIDL loan application 'Redline Auto' owners certified it had 4 employees with an

---

[13] The criminal complaint for Hassan Kaniyke can be located in PACER using case number 2:21-CR-00081-VAP

- A query of the California business registry was not able to find Timeline Transport participating in business on or before 2019 or owned by Dadyan or any of his co-conspirators. The only business found with a similar name was formed in January 2003 and has been inactive since October 25, 2013

- Court documents[14] state Dadyan and his co-conspirators used stolen, fictitious, and synthetic identities and business names to submit fraudulent applications in effort to obtain funds he otherwise was not eligible for

- In total, Dadyan and his co-conspirators submitted 151 fraudulent EIDL and PPP loan applications seeking $21.9 million and ultimately received a total of at least $18 million in PPP and EIDL funds from the SBA and other financial institutions.

35. **Tina Chen**

- Tina Chen, a white female of Asian descent, was charged and convicted along with several co-conspirators of fraudulently obtaining COVID EIDL, PPP, and SBA 7(a) loans

- In total Chen applied for five loans totaling approximately $1,024,135 and received $766,735. Most notable, two of the five loans Chen applied for and received funding for were EIDL loans (1) one for Definito on April 7, 2020, in the amount of $91,600 and another for Minnow on April 9, 2020 in the amount of $111,600.

- According to business filings found on the California business registry, Definito, LLC. was not formed with the state of California until after the COVID-19 pandemic with an original filing date of February 09, 2021 and the registered owner is Frank Hamilton, a named coconspirator. Tina Chen listed only as the in-state registered agent to service process in Definito's business registry documents

- According to business filings found on the California business registry, Minnow, LLC. was formed with the state of California May 20, 2019 and the registered owner is Frank Hamilton, a named coconspirator. Tina Chen is listed only as registered agent of Minnow's for the purpose of service of process in the business registry documents.

## PLAINTIFF'S CLAIMS UNDER 'CIVIL RIGHTS ACT'

**A. Plaintiff asserts the belief she was discriminated against and asks the Court, in trial by jury, to assess the Defendants negligence and/or misconduct to determine if actual and compensatory damages and other remedies can be granted**

36. For reasons already listed the Plaintiff asserts that her rights, pursuant to 42 USC § 1981 (b), to "make and enforce contracts", has been infringed upon by the Defendants.

37. The Plaintiff is a member of a protected class but believes she was scrutinized and screened more stringently and not allowed the same opportunities to receive Congress and government intended COVID relief aid because of her race, gender, or both.

38. The Plaintiff believes this discrimination resulted and attributed to the Defendants' failure to apply logic to their decision-making resulting in gross negligence and misconduct – as the Defendants failed to follow agency derived SOP 50 30 9 and Congress directives on the processing of COVID related EIDL application #3300453665, submitted by the Plaintiff

**B. Plaintiff asks that the Court allow her to plea her case to a jury so that she may recover actual and compensatory damages suffered as a result of this discrimination.**

39. The Plaintiff asks that she be allowed to recover compensatory and punitive damages from the liable party (-ies) after

---

[14] The criminal complaint for Vahe Dadyan and his coconspirators can be located in PACER using case number 2:20-CR-00579-SVW

which time the court decides which party to have liability and decision making in the repeated denial of her COVID EIDL loan requests.

## PLAINTIFF'S FTCA CLAIM AND DEFENDANT'S 'DUTY OF CARE'

### A. CARES ACT & COVID EIDL PROGRAM

40. Section 7(b)(2) of the Small Business Act authorizes the SBA to make Economic Injury Disaster Loans ("EIDL") to eligible small businesses located in a disaster area[15].

41. On March 6, 2020, Congress deemed COVID-19 to be a disaster in Title II of the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Public Law 116-123, 134 Stat, 146, 147, respectively. This declaration expanded eligibility and waived certain rules in effort to dispense aid to hard hit businesses quickly.

42. Considering the number of businesses expected to be affected by the COVID-19 pandemic changes to the EIDL program did not require advance notice and public comment – doing so were determined to be "impracticable" and "contrary to the public interest"[16] instead changes to the original EIDL program were published and disseminated to the public in the Federal Register.

43. On March 24, 2021, the SBA increased the maximum amount that can be borrowed under the COVID EIDL program from $150,000 to $500,000 and from a 6-month economic injury coverage period to a coverage period of 24 months[17].

44. Section 7(b)(2) of the Small Business Act authorizes Act authorizes the SBA to make Economic Injury Disaster Loans ("EIDL") to eligible small businesses located in a disaster area.

45. On March 6, 2020, Congress deemed COVID-19 to be a disaster in Title II of the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Public Law 116-123, 134 Stat, 146, 147, respectively. This declaration expanded eligibility and waived certain rules in effort to dispense aid to hard hit businesses quickly[18].

### B. USE OF COVID EIDL FUNDS

46. In September 2021, the agency amended the 13 Code of Federal Regulations ("CFR") 123.303 the use of proceeds rule, which previously only allowed EIDL proceeds to be used by business owners for working capital, citing the length of the pandemic and need for cash reserves for business owners struggling to make their debt payments. The new rule expanded use of loan proceeds to cover expenses such as:

- **monthly payments**[19]
- **debt payments**[20]
- **payments of deferred interests, and pre-payments**[21]

### C. DUTY OF CARE TO PLAINTIFF

47. The Defendant, a government agency, by order of Congress were mandated to extend COVID EIDL grants and loans to all eligible applicants and their business. The plaintiff will and has provided a preponderance of evidence that she is an

---

[15] The declared disaster area for the COVID-19 pandemic were all impacted business in the United States

[16] 5 U.S.C. 553(b)(3)B)

[17] On September 08, 2021, Congress approved a change to the program allowing borrowers to borrow as much as $2,000,000

[18] Application processing guidelines per the US Small Business Act designates applications should be processed within

[19] Monthly payments such as rent payments on the Plaintiff's home and office space and Plaintiff's vehicle

[20] Debt payments such as the Plaintiff's credit cards

[21] Payments of deferred interests such as Plaintiff's student loans

eligible applicant with an eligible business.

48. Additionally, the Plaintiff was denied her right to 'self-certify' to her business's revenue and eligibility after successful credit screening.

49. The other named Defendants had a duty to process the Plaintiff's application without any additional scrutiny or discrimination that was not applied to other applicants.

50. The Defendants collectively had a duty to ensure no discrimination occurred during the processing of applications.

51. If it is shown, during these proceedings, the contractor's actions are what led to the Plaintiff being harmed the agency is just as liable for the damages as they had a duty to properly train contractors and oversee the proper handling of applications.

### C. PROXIMATE CAUSE

52. No argument can be made that the Plaintiff is, in any way, responsible for or can be named as the cause of the negligence presented in this case. Additionally, the Plaintiff followed every step and process presented by the agency to remedy the issue at hand and with no help from the agency was not successful in her efforts.

### DEFENDANT'S BREACHED THEIR DUTY AND FAILED TO AID PLAINTIFF CAUSING HARM TO PLAINTIFF

#### A.  Congress Intention's & SBA's Discretion and Deference

53. Section 1110 of the CARES Act permitted SBA to waive rules related to personal guaranties on COVID EIDL loans and the requirement that the applicant be unable to obtain credit elsewhere to be eligible.

54. Section 1110 of the CARES Act also provided the SBA with the authority to approve applicants based solely on the credit score of the applicant -OR- use alternative appropriate methods to determine an applicant's ability to repay.

55. In short, the Plaintiff met all eligibility requirements as defined by Congress and the Defendants' failed to aid the Plaintiff.

56. Congress intended for businesses to be funded with as few roadblocks and as short processing time as possible.

57. Absent statutory authorization, SBA may not, itself, impose any requirements for COVID EIDL loans not approved by Congress. However, in the case of the Plaintiff's application the Defendants denied the plaintiff based on factors that were never intended to be considered.

#### B.  Causation: Defendants' Breach of Duty, negligence, and errors were the proximate cause of the Plaintiff's injuries

58. Section 7(b)(2) of the Small Business Act authorizes Act authorizes the SBA to make Economic Injury Disaster Loans ("EIDL") to eligible small businesses located in a disaster area.

59. On March 6, 2020, Congress deemed COVID-19 to be a disaster in Title II of the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Public Law 116-123, 134 Stat, 146, 147, respectively. This declaration expanded eligibility and waived certain rules in effort to dispense aid to hard hit businesses quickly.

60. Section 7(b)(2) of the Small Business Act authorizes Act authorizes the SBA to make Economic Injury Disaster Loans ("EIDL") to eligible small businesses located in a disaster area.

61. On March 6, 2020, Congress deemed COVID-19 to be a disaster in Title II of the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Public Law 116-123, 134 Stat, 146, 147, respectively. This declaration expanded eligibility and waived certain rules in effort to dispense aid to hard hit businesses quickly.

62. The Defendants had a duty to aid all eligible businesses that sought aid but failed to aid the Plaintiff as they continuously perpetuated an idea that the Plaintiff was not eligible because her business was not formed before COVID despite the Plaintiff proving that it was. The Defendants screened every appealer as if they were intending to commit fraud. Viewing applicants through this lens caused the Defendants to overlook and dismiss easily verifiable information, information in the Plaintiff's case was readily available and provided to the agency such as the Plaintiff's business formation documents and notarized bank statements that showed the Plaintiff business was established prior to the COVID-19 pandemic.

63. It was the agencies failure to properly respond to and process the Plaintiff's request for aid that would ultimately lead to her business's closure and subsequent financial hardships. Those financial hardships caused the plaintiff and her children emotional distress.

## PLAINTIFF HAS EXHAUSTED ADMINISTRATIVE REMEDY

### A. Plaintiff's Requisite 'Notice of Claim'

64. In observance of relevant statutes and laws the Plaintiff presented the U.S. Small Business Administration the Plaintiff provided the agency with a Notice of Claim (Intent to Sue) in December 2021 at the Ft. Worth Processing and Disbursement Center. The Defendants never responded.

65. In March 2022, the Plaintiff sent the same letter by USPS Certified mail to multiple officers at the U.S. Small Business HQ offices in Washington, DC.

66. In May 2023, the Plaintiff filed a suit against the agency – the Plaintiff's tort claim was dismissed without prejudice. In July 2022, while the proceedings were ongoing the Plaintiff emailed a request to the Defendants – the notice was forwarded to the AUSA representing the agency at the time but no response or offer to settle was made. After the dismissal of the suit the Plaintiff followed up with the agency by emailing employees, namely Eric S. Benderson, of the agency that provided declarations in the suit asking for a formal response to the Notice of Claim. Later the Plaintiff forwarded those emails to members of management at the SBA.

67. Additionally, the Plaintiff mailed another copy of the Notice of Claim to the SBA Headquarter offices in Washington, DC.

68. To date, the Plaintiffs have not responded to any of the Plaintiff's Notices of Claim(s), or any follow up correspondences that the Plaintiff has sent asking about the progress of a response.

69. It has been 15 months since the Plaintiff gave her first notice to the agency at the Ft. Worth PDC, approximately 12 (twelve) months since the Plaintiff sent Notice of Claims to multiple offices at the agency's headquarters, 10 (ten) months since the Plaintiff filed suit against the agency, and 2 (two) months since the Plaintiff's suit was dismissed without prejudice. The six months the Defendants had to respond has long elapsed and they have not responded. Agency failure or refusal to respond does not inherently enforce their sovereign immunity.

### B. Per statute Plaintiff not required to wait more than 6 (six) months to file suit shall the offending agency fails to respond or settle

### C. Agency failure to respond is not an isolated incident

70. After filing her suit, a group of Reddit users dedicated to monitoring suits against the agency reached the Plaintiff by phone. The Plaintiff befriended several members of the group and advised them to file a Notice of Claim as requisite to a possible tort claim.

71. Additionally, other members of the Reddit group, at least two, privately messaged the Plaintiff advising they filed Notice of Claims in September 2022. To date those parties has either not received any response or, in some cases even an acknowledgement of their Notice of Claim.

## PLAINTIFF'S INJURIES SUSTAINED AS A RESULT OF DEFENDANT'S TORTIOUS ACTS

### A.  Plaintiff's Personal Finance Injuries Sustained

72. Due to the negligence by the SBA or the other named defendants', the hired contractors, actions the Plaintiff was not granted the COVID EIDL loan she was eligible for in the maximum amount of $377,200 – the grant size was based on her business's gross receipts in 2019. The $377,200 was intended to synthesize revenue for businesses affected by COVID -19, providing income replacement for 2020 and 2021. The plaintiff seeks to recover this loss.

73. Due to the lack of funding the Plaintiff experienced a major decrease in revenue in 2022.  The plaintiff ultimately had to close her business after months of pleading with the agency for aid and filing an APA suit that was dismissed because the agency could not afford representation for her business - and still not receiving aid. The closing of the Plaintiff's business has caused the Plaintiff a loss of income of at least $188,600 for 2022 and a reduction in income of $137,000 for 2023 onward. The plaintiff seeks to recover this loss.

74. Due to the negligence by the SBA or the other named defendants', the hired contractors, actions the Plaintiff was unable to pay her credit card bills; the Plaintiff's fixed monthly debt payments would have been a covered use for the EIDL loan funds had her application been processed correctly. As a result, now the Plaintiff's credit score is so poor that she worries she may never be able to purchase a home, obtain a business loan to start another business at a later date, and will not be able to lead a life that doesn't require her to make major purchases with cash (which she cannot do as she has wiped out all cash reserves) or file for bankruptcy. Additionally, the plaintiff had a credit repair business that now has now lost credibility considering the plaintiff's own score.

75. Due to the negligence by the SBA or the other named defendants', the hired contractors, actions the Plaintiff faced eviction multiple times. This was not only financially stressful but emotionally painful as well.

76. Due to the negligence by the SBA or the other named defendants', the hired contractors, actions the Plaintiff's was unable to make regular car payments and her vehicle was repossessed. The Plaintiff's monthly car expense would have been an, otherwise, covered expense if her application was processed correctly.

77. The plaintiff will pursue punitive damages for the damages caused to her personal finances and credit.

78. The Plaintiff has now had to file for bankruptcy which will hinder her from obtaining SBA financing in the future or purchasing a home for her children anytime in the future.

### B.  Plaintiff's Physical Injuries Sustained

79. The Plaintiff has experienced fluctuation in her body weight as a result of poor eating habits, at times varying from extreme undereating to overeating. These changes have caused the Plaintiff anguish, trouble breathing at times and joint pain.

80. The Plaintiff spent many nights up researching; the sleepless nights took a toll on her physical and mental health often causing insomnia and irregular sleeping patterns, mood swings, irritability.

### C.  Plaintiff's Harm to Mental Health Sustained

81. The Plaintiff has experienced bouts of depression and worthlessness due to the loss of her business.

82. The Plaintiff experienced suicidal thoughts and self-harm because at the constant pressure of not being able to provide for her children, the numerous eviction filings, the frustration of not being able to find anyone within the agency able to help with the improper processing of her application.

83. The depression affected the Plaintiff ability to care for

### D. Plaintiff's Harm to Family and Home life

84. Section 7(b)(2) of the Small Business Act authorizes Act authorizes the SBA to make Economic Injury Disaster Loans ("EIDL") to eligible small businesses located in a disaster area.

85. On March 6, 2020, Congress deemed COVID-19 to be a disaster in Title II of the Coronavirus Preparedness and Response Supplemental Appropriations Act of 2020, Public Law 116-123, 134 Stat, 146, 147, respectively. This declaration expanded eligibility and waived certain rules in effort to dispense aid to hard hit businesses quickly.

## DEFENDANT'S SOVEREIGN IMMUNITY

86. The Defendants failure to respond to the Plaintiff's Notice of Claim; submitted in person at the Ft. Worth Processing and Disbursement Center in December 2021 and via certified mail to multiple offices and executive employees in March 9, 2022 via certified mail waives their sovereign immunity as explained by 28 USC §2675 (a) which reads "… The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim…"

87. It has been more than a year since the Plaintiff presented her claim in writing at the Ft. Worth Processing and Disbursement Center and nearly a year since the plaintiff presented a claim to the SBA leadership at the headquarters office in Washington, DC.

## CLAIMS FOR RELIEF

88.   The courts recognize a strong presumption favoring judicial review of administrative action.

89.   The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

90.   The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

## COUNT I- PECUNIARY AND COMPENSATORY DAMAGES UNDER 'FTCA' & "ECOA"

91.   The Plaintiff asks that the court considers that in September 2021 the SBA allowed COVID EIDL loan proceeds to be used to make debt payments including car payments. However, because the Plaintiff did not have the aid promised by Congress and the Defendant it resulted in the Plaintiff's loss of income caused her vehicle to be repossessed. The Plaintiff seeks relief in pecuniary/compensatory damages as defined by FTCA 28 U.S. Code § 2674 and/or 15 U.S.C. § 1691.

92.   With no aid from the Defendant the Plaintiff depleted all cash reserves including maxing out all credit cards resulting

in debt incurred and financial losses in excess of $78,000. The Plaintiff seeks relief for pecuniary/compensatory damages as defined by FTCA 28 U.S. Code § 2674 and/or 15 U.S.C. § 1691.

93.   The Plaintiff seeks relief for  pecuniary/compensatory damages for physical and mental anguish suffered personally as defined by FTCA 28 U.S. Code § 2674 and/or 15 U.S.C. § 1691.

94.   In 2019, the Plaintiff quit their full-time job to operate LJ Professional and Financial Services, LLC. The Plaintiff has no other work history to fill the gap and would have to reenter the workforce at entry-level pay resulting in a diminished lifestyle impaction to herself and her children. The Plaintiff is the sole owner and member of the corporation thus the Plaintiff is suing for loss of income of at least $338,600 in the last two years (years 2022 and 2023). The Plaintiff maintains not having the COVID EIDL loan for operating expenses caused her to cease operating/ slowly halted her business. In years 2022 and 2023 she did not have the funds to purchase tax preparation software, conduct market research, maintain her office lease or office communications software and telephone to operate remotely and suffered a near 100% loss of income for 2022 and a complete loss of income for 2023. The Plaintiff seeks relief for $338,600 in actual damages as defined by FTCA 28 U.S. Code § 2674 and/or 15 U.S.C. § 1691.

95.   A $377,200 loss from not having the loan funded which would have provided operating expenses for years 2020 and 2021. The Plaintiff seeks relief for $377,200 in actual damages as defined by FTCA 28 U.S. Code § 2674 and/or 15 U.S.C. § 1691.

96.   Prior to COVID the Plaintiff had good credit scores and took pride in their ability to obtain credit and repaid debts timely. The Plaintiff's current credit scores have a poor rating without compensation to redress the Plaintiff's injury and address the debt the Plaintiff will have to use funds allocated for the recovery and working capital of their business to redress the losses and damages. The Plaintiff seeks relief for pecuniary/compensatory damages as defined by FTCA 28 U.S. Code § 2674 and/or 15 U.S.C. § 1691.

## COUNT II- EQUITABLE AND DECLARATORY RELIEF UNDER THE 'ECOA'

97.   The Plaintiff asks that the court declare the SBA's decision making in the processing of her loan application illegal and a violation of the Equal Credit Opportunity Act

## COUNT III- EQUITABLE AND DECLARATORY RELIEF UNDER THE 'Civil Rights Act'

98.   The Plaintiff asks that the court declare the SBA's decision making in the processing of her loan application illegal and a violation of the 'Civil Rights Act'

## PRAYER FOR RELIEF

99.   For the foregoing reasons, "the Plaintiff" respectfully requests that this Court:

100. In accordance with 15 U.S.C. § 1691e (c) declares the actions and practices of the Defendants unlawful and prohibited in observance under the Equal Credit Opportunity Act

101. In accordance with 42 U.S.C. § 1988 declares the actions and practices of the Defendants unlawful and prohibited in observance under the Vindication of Civil Rights Act

102. A declaration that the Plaintiff has exhausted all administrative remedies

103. A declaration that the Plaintiff's business was entitled to the COVID funding she was denied

104. A declaration that the Plaintiff met all eligibility criteria

105. A declaration that the Plaintiff's business, LJ Professional and Financial Services, LLC. is/was a business that met all SBA set guidelines established

106. Allow a jury to consider Plaintiffs' claim for actual damages to redress Plaintiff and grant the Plaintiff's award of $716,000

107. Allow a jury to consider Plaintiffs' claim for pecuniary and compensatory damages to redress Plaintiff and grant the Plaintiff's award of $15,000,000

108. Pursuant to relevant statutes 15 U.S.C. § 1691(f), 42 U.S.C. § 1988 (b), and 2 U.S.C. § 2412 award attorney's fees to be paid by the United States of America and/or the responsible agency named in the above-entitled action should the Plaintiff prevail in her suit

109. Pursuant to relevant statutes 42 U.S.C. § 1988 (c) award expert fees to be paid by the United States of America and/or the responsible agency named in the above-entitled action should the Plaintiff prevail in her suit

110. Pursuant to relevant statutes 28 U.S.C. § 2412 (a-f) award all relevant fees for the costs to bring this action against the Defendants to be paid by the United States of America and/or the responsible agency named in the above-entitled action should the Plaintiff prevail in her suit

111. Any other such relief the plaintiff may show herself entitled

112. Plaintiff demands a trial by jury on all issues triable

Dated: 11/23/2023                          Respectfully submitted,

                                           Lindra I. Jackson,

                                           /s/ Lindra I. Jackson

                                           Lindra I. Jackson (*pro se*)

                                           4175 Bunker Hill Rd. Apt 5309

                                           Garland, Tx 75048

                                           lindrajackson@yahoo.com

                                           469-909-8024

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

Case 3:23-cv-02677-S-BT   Document 2   Filed 12/04/23   Page 20 of 23   PageID 22

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lindra I Jackson | SBA, Isabella Casillas Gomez, USA, Rapid Financial Services, Rocket Companies, Inc. |

**(b)** County of Residence of First Listed Plaintiff **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

3 - 23 CV 2677 - S

RECEIVED
DEC - 4 2023

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [x] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [x] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application [ ] 465 Other Immigration Actions | | |
| | [ ] 448 Education | [ ] 550 Civil Rights [ ] 555 Prison Condition [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC Sec 2671-2680; 42 USC Sec 1998;

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ ~~$5,716,000~~ 15,716,000

CHECK YES only if demanded in complaint:
JURY DEMAND:  [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD   (pro se)

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

